# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3865

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri. |
| John Newton, | * |
| | * |
| Appellant. | * |

_____

Submitted:  April 20, 1999

Filed:  July 22, 1999

_____

Before RICHARD S. ARNOLD and WOLLMAN,[1] Circuit Judges, and
     MAGNUSON,[2] District Judge.

_____

WOLLMAN, Chief Judge.

_____

[1]Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

[2]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota, sitting by designation.

John Newton appeals from the sentence imposed by the district court[3] following his conviction on one count of possession with the intent to distribute methamphetamine, one count of possession with the intent to distribute heroin, and three counts of distribution of cocaine, all in violation of 21 U.S.C. § 841(a)(1). We affirm.

In early February 1998, Newton sold drugs to a confidential informant in Lincoln County, Missouri. The sale initiated a three-month federal investigation, during which Joseph Fink, a special agent with the Federal Bureau of Investigation, would telephone Newton to arrange for the purchase of drugs. Newton would then either leave the drugs at an agreed-upon site or deliver the drugs to the confidential informant, who in turn delivered the drugs to Fink. On one occasion, Fink, via the confidential informant, gave Newton $2,000 for the purchase of drugs.

Near the end of February, Newton reached an agreement with Fink for a loan to purchase a vehicle to replace the one that Newton had wrecked the preceding week while transporting drugs. To secure the loan, Newton agreed to post several guns as collateral. Newton and Fink later agreed that the loan would be repaid with drugs.

At the agreed-upon time and location, Newton delivered to the confidential informant a 9mm pistol and an assault rifle (unloaded but operable) in exchange for approximately $2,800 in cash, which Newton later used to purchase a pickup truck. Thereafter, Newton delivered on some seven occasions various quantities of methamphetamine, heroin, and cocaine to the confidential informant and Fink.

Newton was arrested on April 17, 1998, and subsequently pleaded guilty to charges described above. The presentence report recommended a 2-level enhancement

---

[3]The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

for possession of a firearm during the commission of the offenses.  See United States Sentencing Guidelines § 2D1.1(b)(1).  Newton objected to the recommended 2-level increase, arguing that the firearms were not connected to the drug offenses.  The district court overruled the objection, adopted the factual findings in the presentence report, and sentenced Newton to sixty-four months' imprisonment on each count, to run concurrently, and a three-year period of supervised release.

Newton contends that the district court erred in enhancing his sentence for possession of a firearm in connection with the drug offenses.  He argues that because the two firearms were used only as collateral for a loan, there was insufficient evidence to show that they were connected to the underlying drug offenses.

Section 2D1.1(b)(1) provides for a 2-level enhancement in a defendant's base offense level "[i]f a dangerous weapon (including a firearm) was possessed."  The 2-level increase "reflects the increased danger of violence when drug traffickers possess weapons," and "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  U.S.S.G. § 2D1.1, comment. (n.3).  For the enhancement to apply, the government is required to prove by a preponderance of the evidence that a weapon was present and that it was at least probable that the weapon had a nexus with the criminal activity.  See United States v. Betz, 82 F.3d 205, 210 (8th Cir. 1996); United States v. Richmond, 37 F.3d 418, 419 (8th Cir. 1994).  A district court's finding that a defendant possessed a firearm within the meaning of  section 2D1.1(b)(1) will be reversed only if it is clearly erroneous.  See United States v. Payne, 81 F.3d 759, 762 (8th Cir. 1996).

To establish the element of possession, the government must show that the firearms were "found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred."  See United States v. Bost, 968 F.2d 729, 732 (8th Cir. 1992) (quoting United States v. Hooten, 942 F.2d 878, 882 (5th Cir. 1991)).  We conclude that the government established this element, for when viewed

in the context of their ongoing dealings, the auto loan agreement was part of the drug transactions between Newton and Fink.

The issue then becomes whether the government proved that the weapons were connected to the offenses. See Bost, 968 F.2d at 732. The government can prove such a nexus or connection by showing the existence of a temporal and spatial relation between the weapon, the drug trafficking activity, and the defendant. Payne, 81 F.3d at 763.

Newton argues that the use of guns as collateral for a cash loan is insufficient to establish the "connected with" requirement of section 2D1.1(b)(1). The use or intended use of firearms for one purpose, however, even if lawful, does not preclude their use for the prohibited purpose of facilitating the drug trade, and therefore does not automatically remove them from the purview of section 2D1.1(b)(1). See United States v. Rogers, 150 F.3d 851, 858 (8th Cir. 1998). "The fact that a gun is momentarily treated as an item of commerce does not render it inert or deprive it of destructive capacity. Rather, as experience demonstrates, it can be converted instantaneously from currency to cannon." Smith v. United States, 508 U.S. 223, 240 (1993), quoted in Rogers, 150 F.3d at 858. As we held in United States v. Overstreet, 5 F.3d 295, 297 (8th Cir. 1993) (per curiam), the acceptance of unloaded weapons in exchange for drugs satisfies the "connected with" requirement of section 2D1.1(b)(1). Likewise here, because the guns directly facilitated the continuing drug transactions, we conclude that a sufficient nexus existed between Newton, the firearms, and the drug transactions to satisfy the requirements of section 2D1.1(b)(1).

The sentence is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.